UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LES A. GILEWSKI,

    Plaintiff,

v.	Case No. 1:15-CV-238

PROVIDENT LIFE AND ACCIDENT	HON. GORDON J. QUIST
INSURANCE COMPANY,

    Defendant.
_____/

## OPINION

    Plaintiff, Les Gilewski, has sued Defendant, Provident Life and Accident Insurance Company (Provident), under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, seeking review of Provident's decision denying him long term disability benefits. Defendant has filed the Administrative Record and the parties have filed cross-motions for judgment on the Administrative Record in accordance with the procedures set forth in *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998). For the reasons set forth below, the Court will grant Provident's motion and affirm its decision denying benefits.

### I. BACKGROUND

    Gilewski is the former owner and president of Radiance Mold and Engineering, Inc., an auto supplier. (ECF No. 9-1 at Page ID.166.) Gilewski previously purchased two disability insurance policies from Provident. (*Id.* at Page ID.211-43, 239-82.) The first policy, which provided 24 months of disability benefits, is not at issue in this case. (*Id.* at Page ID 239-82.) The second policy requires Provident to pay monthly benefits to a participant who satisfies various conditions,

including being disabled within the meaning of the term as defined by the policy. (*Id.* at Page ID.220.) The policy states:

> Disability, or disabled, means that, due solely to Injuries or Sickness:
>
> 1. you have a Loss of Time or Duties in your occupation; and
> 2. you have a Loss of Earnings of at least 20%.
>
> * * *
>
> Loss of Time or Duties means that:
>
> 1. you are not able to perform one or more of the substantial and material duties of your occupation; or
> 2. you are not able to perform the substantial and material duties of your occupation for as much time as you regularly performed them before you became disabled.
>
> * * *
>
> Your occupation means the occupation . . . in which you are regularly engaged at the time your became disabled.

(*Id.* at Page ID.219-20.)

On October 12, 2009, Gilewski applied for benefits under both of his Provident policies, citing his medical condition as anxiety and depression. (*Id.* at Page ID.159-71.) Gilewski stated that he began having symptoms of depression on May 25, 2009, and that he was hospitalized for depression from June 4, 2009 to June 9, 2009. (*Id.* at Page ID.164-65.) Gilewski included a statement from his treating psychiatrist, Dr. Dan Guyer, which stated that Gilewski suffered from major depression and was unable to work. (*Id.* at Page ID.169-71.) Dr. Guyer further noted that he expected to see improvement in six to twelve months. (*Id.*)

Provident paid Gilewski all available benefits under the first policy. (ECF No. 9-2 at Page ID.671-72.) Provident initially denied Gilewski's claim under the second policy because it determined that, because Gilewski had negative earnings during the years preceding his disability onset date, he had not sustained a 20-percent earnings loss. (ECF No. 9-3 at Page ID.3798.) Provident later reconsidered that determination, however, and paid all past due benefits.

2

On January 5, 2010, Gilewski's psychologist, Dr. Fred Roberts, submitted a questionnaire to Provident noting that Gilewski's depression had been severe in June 2009, but had improved to moderate by October 2009. (ECF No. 9-3 at Page ID.3819.) Dr. Roberts estimated that it was likely Gilewski would be ready to work at least part-time by June 2010. (*Id.* at Page ID.3823.) In June 2011, Dr. Roberts submitted another questionnaire stating that Gilewski was less depressed and feeling more hopeful about the future but noting that it would continue to be too stressful for Gilewski to run a large company. (ECF No. 9-4 at Page ID.1522-27.)

In mid-2011, Gilewski stopped seeing Dr. Roberts and began seeing Dr. Gerald Shiener, a board certified psychiatrist. (*Id.* at Page ID.1534-35.) On June 7, 2011, Dr. Shiener submitted to Provident an attending physician statement concluding that Gilewski suffered from major depression and could not work. (*Id.*) Dr. Shiener provided regular attending physician statements thereafter. (ECF. No. 9-10 at Page ID.3157-98.) However, for many of those statements, Dr. Shiener merely photocopied a previous statement and changed the date. (*Id.*)

In the Spring and Summer of 2012, Provident sent several letters to Dr. Shiener requesting Gilewski's medical records, including treatment notes. (ECF No. 9-6 at Page ID.2135.) On June 18, 2012, Dr. Shiener responded with a letter stating that it was his policy not to release the requested records because disclosure of sensitive personal information limits a patient's ability to participate in treatment. (*Id.* at Page ID.2139-40.) Dr. Shiener went on to state that he had enclosed a copy of the narrative report he completed when he first began seeing Gilewski, and that Gilewski's condition had not improved since that report was completed. (*Id.*) The narrative report stated that Gilewski suffered from severe depression and was incapable of any sort of competitive employment. (ECF No. 9-4 at Page ID.1405-10.)

On December 6, 2012, Provident sent a letter to Dr. Shiener requesting that, in light of his policy regarding the release of medical records, he provide the following: (1) a list of the dates he treated Gilewski; (2) Gilewksi's GAF score[1] every six months; and (3) a written summary of Gilewski's current condition, restrictions, and treatment plan, including medications. (ECF No. 9-7 at Page ID.2343.) On February 20, 2013, Dr. Shiener responded with a letter stating that he had seen Gilewski monthly since January 2011, and that he had enclosed ledger cards demonstrating as much. (*Id.* at Page ID.2403.) The letter further stated that Gilewksi's GAF score was 40 when the treatment relationship began, and that it stabilized at 50 after Dr. Shiener adjusted Gilewski's medications. (*Id.*) The letter went on to describe how Gilewski's GAF score increased to 59 in late 2011, that it fell to 40 thereafter, and that it had stabilized at around 50 by the time the letter was written. (*Id.*) Finally, Dr. Shiener listed Gilewski's medications and described his treatment plan. (*Id.* at Page ID.2404.)

After reviewing the letter, Dr. John Szlyk, an onsite psychiatrist at Provident, spoke with Dr. Shiener about Gilewski's condition and treatment. (*Id.* at Page ID.2439-40.) Following that conversation, Dr. Szlyk recommended that Provident obtain a psychiatric independent medical examination (IME). (*Id.*) Provident selected Dr. Calmeze Dudley, a board certified psychiatrist, to conduct the IME.

On June 19, 2013, Dr. Dudley examined Gilewski. (ECF No. 9-8 at Page ID.2691-2700.) Dr. Dudley diagnosed Gilewski with "major depressive disorder, unipolar, stabilized," and assigned him a GAF score of 80. (*Id.* at Page ID.2698.) Dr. Dudley noted that Gilewski "continues to be maintained on antidepressant medication and by all accounts is doing well." (*Id.* at Page ID.2699.)

---

[1] A GAF Score is a measure used by mental health professionals to describe the general level of functioning of a patient.

4

Dr. Dudley concluded that Gilewski did not require a psychiatric disability status and that he was able to return to work without restrictions. (*Id.*) Based on Dr. Dudley's report, Dr. Szlyk concluded that Gilewski did not have restrictions or limitations that prevented him from returning to work. (*Id.* at Page ID.2708.) On July 12, 2013, Provident notified Gilewski that it would terminate his benefits based on its determination that he was able to perform the duties of his occupation. (*Id.* at Page ID.2712-16.)

On September 4, 2013, Dr. Shiener sent Provident a letter commenting on Dr. Dudley's report. (*Id.* at Page ID.2751-55.) Dr. Shiener stated that he believed Dr. Dudley's GAF assessment was incorrect, and that Gilewski was limited in his ability to take pleasure in activities and that his mood was markedly depressed. (*Id.* at Page ID.2752.) Dr. Shiener also noted that Dr. Dudley had limited experience in treating depressed patients. (*Id.* at Page ID.2753.)

In an October 8, 2013 letter to Provident, Dr. Dudley responded to Dr. Shiener's criticisms. (*Id.* at Page ID.2763-66.) Dr. Dudley stated that Dr. Shiener's opinions were inconsistent with those rendered by Gilewski's other providers, and that, if the diagnosis provided by Dr. Shiener was accurate, Gilewski would require "a more intensified intervention." (*Id.* at Page ID.2766.) Finally, Dr. Dudley defended his qualifications to render an opinion, pointing out that he had 27 years of experience treating depressed patients. (*Id.* at Page ID.2765.) Thereafter, Provident informed Gilewski that it would not change its benefits decision in light of the additional information provided by Dr. Shiener. (*Id.* at Page ID.2806.)

On January 3, 2014, Gilewski appealed the termination of his benefits. (*Id.* at Page ID.2819.) Gilewski provided additional materials, including affidavits from family members describing his condition and activities, an affidavit from an executive in the automobile mold industry detailing the demands of that position, and a report from a vocational expert. (ECF No. 9-9 at Page ID.2833-57.) Dr. Peter Brown, a board certified psychiatrist, reviewed Gilewski's file for the appeal. (*Id.* at

5

Page ID.2598-3600.) Dr. Brown concluded that Gilewski's medical information did not support any restrictions or limitations. (*Id.* at Page ID.3600.) Dr. Brown noted that, although it was difficult to assess Dr. Shiener's conclusions without medical records, Gilewski's course of treatment was not consistent with a severe and pervasive psychiatric impairment. (*Id.*) Dr. Brown also found that the IME report was "comprehensive, thoughtful and consistent with professional standards." (*Id.*)

On January 30, 2014, Provident notified Gilewski that it had affirmed its denial of benefits. (*Id.* at Page ID.3640-43.) The letter stated that Gilewski's treatment records would be helpful in evaluating Dr. Shiener's conclusions, and that if those records were not available, Provident would review a summary that included changes in treatment and dates of services during 2013. (*Id.* at Page ID.3642.) Gilewski did not provide the suggested documents.

Following the denial of his appeal, Gilewski filed this action.

## II. Discussion

### *Standard of Review*

The default standard of review in a claim seeking review of denial of benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), is de novo. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956 (1989). The de novo standard of review applies to both factual determinations and legal determinations by a plan administrator. *Rowan v. Unum Life Ins. Co. of Am.*, 119 F.3d 433, 435 (6th Cir.1997). "In the ERISA context, the role of the reviewing federal court is to determine whether the administrator or fiduciary made a correct decision, applying a *de novo* standard." *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir.1990). "This review is limited to the administrative record and the court is obligated to determine whether the administrator properly interpreted the plan and if the insured was entitled to benefits under the plan." *Kaye v. Unum Group/Provident Life & Accident*, No. 09–14873, 2012 WL 124845, at *5 (E.D. Mich. Jan.17, 2012) (citing *Perry*, 900 F.2d at 967). "The administrator's decision is accorded no deference or

6

presumption of correctness." *Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 809 (6th Cir.2002) (citing *Perry*, 900 F.2d at 966). "When conducting a de novo review, the district court must take a 'fresh look' at the administrative record but may not consider new evidence or look beyond the record that was before the plan administrator." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 616 (6th Cir.1998) (citations omitted).

### *Analysis*

"To succeed in his claim for disability benefits under ERISA, [Gilewski] must prove by a preponderance of the evidence that he was 'disabled,' as that term is defined in the [policy at issue]." *Javery v. Lucent Techs., Inc. Long Term Disability Plan*, 741 F.3d 686, 700 (6th Cir. 2014). After conducting a de novo review of the administrative record, the Court concludes that Gilewski has not demonstrated that he was disabled.

1. The "fresh eyes" requirement

Gilewski argues that Provident violated the "fresh eyes" requirement contained in 29 C.F.R. § 2560.503-1(h). ERISA provides that "every employee benefit plan shall . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2); 29 CFR § 2560.503–1(h)(1). To afford a full and fair review, a plan must provide for "a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse determination that is the subject of appeal, nor the subordinate of such individual." 29 CFR § 2560.503–1(h)(3)(ii). The plan must "[p]rovide that, in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment . . . the appropriate named fiduciary shall consult with [an appropriate] health care professional." 29 CFR § 2560.503–1(h)(3)(ii). That health care

7

professional may not be the "individual who was consulted in connection with the adverse benefit determination that is the subject of the appeal, or the subordinate of any such individual." 29 CFR § 2560.503–1(h)(3)(v).

Gilewski argues that Provident violated the regulation by relying on the medical opinion of Dr. Dudley in both the initial benefits determination and the appeal. Gilewski's argument, however, is based on a misunderstanding of the regulation. The regulation requires only that the claims administrator consult with a different health care professional during the initial benefits determination and the appeal—it does not require that a claims administrator obtain a separate IME for each stage in the process. In this case, Provident consulted with Dr. Szlyk in deciding to terminate benefits, and then consulted with Dr. Brown in deciding the appeal. Dr. Brown was not a subordinate of Dr. Szlyk, and there is no indication he gave any deference to Dr. Szlyk's opinions. Thus, Provident satisfied the "fresh eyes" requirement of 29 C.F.R. 2560-1(h)(3)(v).[2]

2.  Dr. Shiener's opinion

Gilewski further argues that Provident improperly credited the opinion of Dr. Dudley over Dr. Shiener. The Supreme Court has acknowledged "that physicians repeatedly retained by benefits plans may have an incentive to make a finding of 'not disabled' in order to save their employers money and preserve their own consulting arrangements." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832, 123 S. Ct. 1965, 1971 (2003) (internal quotation marks omitted). The Court also recognized, however, that "if a consultant engaged by a plan may have an 'incentive' to make a finding of 'not disabled,' so a treating physician, in a close case, may favor a finding of 'disabled.'" *Id.* Thus, there is no rule as to how courts should weigh the opinion of a treating physician compared to the opinion of a physician conducting an IME.

---

[2] It is not clear that a violation of the "fresh eyes" requirement would have any effect in this case because the Court employs de novo review. Nonetheless, the Court concludes that Provident did not violate the regulation.

In this case, Dr. Shiener's opinion regarding the severity of Gilewski's depression was unsupported by other evidence in the record. Dr. Roberts, who treated Gilewski prior to Dr. Shiener, indicated that Gilewski's condition was improving and anticipated that he would be able to return to work at some point. Gilewski's activities included doing work around the house, tinkering in his pole barn, playing tennis once a week, engaging in regular exercise, hunting, fishing, and vacationing in Florida for three weeks. Those activities are inconsistent with the severe depression that Dr. Shiener described, as well as the GAF scores that he assigned.

More importantly, however, Dr. Shiener did not provide Provident with medical records to support his conclusions. For months, Dr. Shiener simply changed the date on his attending physician reports without further update. Provident repeatedly requested that Dr. Shiener provide treatment notes and other records for Gilewski, but Dr. Shiener refused to do so because he believed that providing those records would impair Gilewski's treatment. While the Court is sympathetic to Dr. Shiener's reasoning, the fact remains that Gilewski put his mental health at issue, and Provident had little basis to make a determination about Gilewski's mental health without Dr. Shiener's treatment notes and other records. Although the second narrative statement that Dr. Shiener provided to Provident provided some insight into Gilewski's symptoms and treatment, it was simply insufficient to support Dr. Shiener's conclusion that Gilewski could not return to work.

The treating physician rule employed in the Social Security context does not apply to ERISA cases. Even if it did, however, it would not change the Court's analysis in this case. In Social Security cases, a treating physician's opinion is entitled to deference "only if it is based on objective medical findings and is not contradicted by substantial evidence to the contrary." *Jackson v. Metro. Life*, 24 F. App'x 290, 293 (6th Cir.2001) (citations omitted). In addition, the Court is "not required to accept a treating physician's conclusory opinion on the ultimate issue of disability." *Id.* In this case, although Dr. Shiener appears to have unimpeachable credentials, his opinion was not supported

9

by treatment notes or other medical records, and it was inconsistent with other evidence, including Gilewski's activities. Accordingly, the Court concludes that Dr. Shiener's opinion is entitled to little weight.

The Court is thus left with the opinion of Dr. Dudley. Dr. Dudley found that Gilewski's depression was stabilized and that he could return to work without restrictions or limitations. Although that opinion was based on a single meeting, it was well-supported and credible.[3] Accordingly, the Court concludes that Dr. Dudley's opinion, in conjunction with other evidence of record, provides a sufficient basis to determine that Gilewski was not disabled.

3.  The vocational expert's opinion

Gilewski argues that Provident's failure to employ a vocational expert to support its determination that he could return to work renders that decision erroneous. Gilewski points to the vocational expert opinion that he provided, which concluded that he was disabled and unable to work. He argues that, because that report constitutes the only vocational evidence, it is determinative of his ability to return to his previous occupation.

"[A] plan administrator is not required to obtain vocational evidence where the medical evidence contained in the record provides substantial support for a finding that the claimant is not totally and permanently disabled." *Judge v. Metro. Life Ins. Co.*, 710 F.3d 651, 662-63 (6th Cir. 2013). In this case, Dr. Dudley concluded that Gilewski had a GAF of 80, which indicates no more than a slight impairment in occupational functioning, and that he did not have any restrictions or limitations that would prevent him from returning to his previous occupation. Moreover, Gilewski provided Provident with extensive details about the nature and duties of his occupation, which were

---

[3] Provident provided Dr. Shiener with a copy of Dr. Dudley's report and granted him an opportunity to respond to its findings and conclusions. Provident then provided Dr. Shiener's response to Dr. Dudley, who addressed each of Dr. Shiener's criticisms. Those letters provide a full picture of the areas of disagreement between the two doctors, as well as the reasons for such disagreement.

not in dispute. The doctors that examined Gilewski and provided the file review were aware of Gilewski's occupational duties when they determined that he had no restrictions or limitations. Accordingly, Provident was not required to obtain evidence from a vocational expert.

4.  Conflict of interest

Finally, Gilewski argues that Provident has an inherent conflict of interest because it determines eligibility for benefits and pays those benefits. A plan administrator's conflict of interest is relevant to whether it abused its discretion. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112, 128 S. Ct. 2343, 2348 (2008). "If the standard of review is *de novo*, then the significance of the administrator's conflict of interest evaporates." *Price v. Hartford Life & Accident Ins. Co.*, 746 F. Supp. 2d 860, 866 (E.D. Mich. 2010). Because the Court has not deferred to the plan administrator's determination in this case, it is not relevant whether there was a conflict of interest.

### III.  CONCLUSION

Having conducted a de novo review of the administrative record and Provident's decision, the Court concludes that Gilewski was not disabled as defined in the policy at issue. Accordingly, the Court will affirm Provident's decision to terminate benefits.

An Order consistent with this Opinion will be entered.


Dated: June 17, 2016                              /s/ Gordon J. Quist
                                                                                     GORDON J. QUIST
                                                               UNITED STATES DISTRICT JUDGE